UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KEYLI LOHNAY CARDOZA-GARCIA, | CASE NO. 2:26-cv-02573-JHC |
| Petitioner, | ORDER |
| v. | |
| JULIO HERNANDEZ ET AL., | |
| Respondents. | |

**I**
**INTRODUCTION**

This matter comes before the Court on Keyli Lohany Cardoza-Garcia's Petition for Writ of Habeas Corpus. Dkt. # 1. The Court has considered the materials filed in support of and in opposition to the petition, the rest of the record, and the governing law. Being fully advised, for the reasons below, the Court GRANTS the petition.

**II**
**BACKGROUND**

Petitioner is a native and citizen of Honduras, who entered the United States without inspection in March 2021. Dkt. # 1 at 4. Petitioner states that following her entry into the United States, she "lived in Tulsa, Oklahoma for about one year, before moving to Spokane, Washington to live with her brother and his family." *Id*. Petitioner lived in Spokane for about

ORDER - 1

four years.  *Id*.  While there, she "got a job, built community through her church, began learning English, and met her fiancé, who is a U.S. citizen."  *Id*.

On March 18, 2026, Petitioner was driving in Spokane when her car was pulled over by several ICE vehicles.  *Id*.  Petitioner states that many ICE agents exited the vehicle, approached her car, and proceeded to arrest her without providing her with a copy of a warrant.  *Id*.  Following her arrest, Petitioner was transferred to the Northwest ICE Processing Center (NWIPC) in Tacoma, Washington.  *Id*.

On April 10, 2026, represented by counsel, Petitioner filed a habeas corpus action in the Western District of Washington.  *Id*.; *see also Cardoza-Garcia et al. v. Hernandez et al*., No. 2:26-cv-01231-TMC, Dkt. # 1.  In this first action, Petitioner argued that she is entitled to a bond hearing under her membership in the Bond Denial Class outlined in *Rodriguez Diaz v. Bondi*, 779 F. Supp. 3d 1239 (W.D. Wash. 2023).  *See id.*  On April 23, 2026, the Honorable Tiffany M. Cartwright granted the petition and ordered that the government either release Petitioner or provide her with a bond hearing under 8 U.S.C. § 1226(a) within 14 days of receiving her request.  *See Cardoza-Garcia et al. v. Hernandez et al*., No. 2:26-cv-01231-TMC, Dkt. # 11 at 4; *see also* Dkt. # 1 at 4; *see also* Dkt. # 1 at 4.

On April 29, 2026, a bond hearing was held for Petitioner at the Tacoma Immigration Court before Immigration Judge (IJ) John Odell.  Dkt. # 1 at 4.  At the hearing, represented by counsel, Petitioner presented evidence of her lack of criminal history and ties to the Spokane community.  *See id*.; *see also* Dkt. # 3 at 22–84.  She also provided letters of support from family, friends, and community members, and evidence that she would have a stable address and financial support from her fiancé if she were to be released.  *Id*.  The government purportedly responded with a single piece of evidence—Petitioner's Form I-213—and argued that Petitioner "is a flight risk because she worked without authorization and because she had a weak asylum

ORDER - 2

claim." *See* Dkt. ## 1 at 5; 3 at 86–90.[1]  IJ Odell denied bond, finding that Petitioner "failed to show that she is not Flight Risk." *See* Dkt. # 3 at 13; *see also* Dkt. # 1 at 3.

On June 10, 2026, weeks after the bond hearing was held, IJ Odell issued a written memorandum explaining his decision to deny bond. *See* Dkt. # 3 at 16–20; *see also* Dkt. # 1 at 5.  The memorandum sets out the standard for considering bond, provides the background of Petitioner's case, and summarizes the evidence submitted by the parties. *See* Dkt. # 3 at 18–19.  It then states: "the court finds that [Petitioner] is a very poor bail risk" given her "very limited ties to this county, her limited opportunities for relief from removal, her unauthorized employment in the United States, and her repeated immigration violations in 2021[.]" *Id*. at 19.  And it concludes with the IJ's finding that Petitioner has not shown "that she is not a flight risk" and that "no amount of bail or condition of parole would be sufficient to mitigate the risk of flight in this case." *Id*.

Separately, Petitioner also appeared pro se before the Tacoma Immigration Court in May 2026 to present her claims for asylum.  Dkt. # 1 at 5.  In an order dated May 26, 2026, IJ Ferdinand Ortiz denied Petitioner's asylum claim but granted her request for withholding of removal under the Convention Against Torture. *See id*.; *see also* Dkt. # 3 at 92.

On May 28, 2026, Petitioner appealed IJ Odell's decision to the Board of Immigration Appeals (BIA). *See* Dkt. # 7 at 3.  On June 25, 2026, the government appealed IJ Ortiz's decision granting protection under the CAT. *Id*.  Both appeals remain pending before the BIA. *See id*.  And as of today's date, Petitioner remains in custody at the NWIPC.  Dkt. # 1 at 5.

Petitioner now files the instant habeas corpus action. *See* Dkt. # 1.  In this second action, Petitioner contends that her continued detention violates her due process rights under the Fifth

---

[1] Respondents have not provided the Court with a recording of the hearing, nor have they rebutted Petitioner's account of the hearing. *See generally* Dkt.

ORDER - 3

Amendment of the U.S. Constitution. *Id*. at 1–2, 16–18. Specifically, she argues that her bond proceedings were constitutionally deficient because IJ Odell abused his discretion by "rel[ying] on facts that, as a matter of law, do not support a finding that [Petitioner] is a flight risk[.]" *Id*. at 2. And she requests that the Court order Respondents to immediately release her from custody, declare that Petitioner's due process rights were violated, and grant counsel with explicit leave to seek attorney's fees under the Equal Access to Justice Act (EAJA). *Id*. at 18.

### III
### DISCUSSION

Federal district courts have the authority to grant a writ of habeas corpus if a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c). "The [habeas] petitioner carries the burden of proving by a preponderance of the evidence that [they are] entitled to habeas relief." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004). That said, under the scheduling order used throughout this district, Respondents have been directed to show cause why the writ of habeas corpus should not be granted. *See* Dkt. # 4 at 1.

Respondents raise two grounds for denying the petition: (1) failure to establish a basis for waiving the exhaustion of administrative remedies requirement; and (2) failure to expressly request permanent injunctive relief. *See generally* Dkt. # 7. Respondents do not address Petitioner's merits argument—that her due process rights were violated because IJ Odell abused his discretion in denying bond. *See id.* The Court nevertheless addresses such argument below, as well as Respondents' arguments in favor of denial, and concludes that Petitioner has met her burden of proving that she is entitled to habeas relief.

A.      Exhaustion of Administrative Remedies

For habeas claims, "[t]he exhaustion requirement is prudential, rather than jurisdictional[.]" *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).  In determining whether prudential exhaustion is required, courts typically begin by considering the "*Puga* factors."  These factors are: "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (quoting *Noriega–Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)).  But "even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement" if at least one of the "*Laing* factors" applies.  *Hernandez*, 872 F.3d at 988.  Such factors are: "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* (quoting *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004)).

Because courts in this district are split as to whether the *Puga* factors favor or disfavor prudential exhaustion where, as here, Petitioner is requesting review of a bond determination,[2] the Court proceeds directly to analyzing whether prudential exhaustion is excused under *Laing*.[3]

---

[2] *See, e.g.*, *Scott v. Wamsley*, 2025 WL 3514304, at *4 (W.D. Wash. Dec. 8, 2025), *reconsideration denied*, 2026 WL 83971 (W.D. Wash. Jan. 12, 2026) (concluding that the *Puga* factors support waiver of prudential exhaustion); *Smith v. Hernandez*, 2026 WL 2085853, at *2–3 (W.D. Wash. Jul. 20, 2026) (same); *W.T.M. v. Bondi*, 2026 WL 262583, at *2–3 (W.D. Wash. Jan. 30, 2026) (same); *Calderon v. Mullin*, 2026 WL 1487774, at *2–3 (W.D. Wash. May 28, 2026) (concluding that the *Puga* factors favor prudential exhaustion); *Zuo v. Hermosillo*, 2026 WL 809882, at *2 (W.D. Wash. Mar. 24, 2026) (same); *Kim v. Mullin*, 2026 WL 948347, at *3–4 (W.D. Wash. Apr. 8, 2026) (same).

[3] *See, e.g.*, *De La Torre Ferretiz, v. Hernandez*, 2026 WL 2123037, at *3 (W.D. Wash. July 23, 2026) (concluding that the cited authority "supports either conclusion regarding exhaustion" under *Puga* so proceeding directly to the *Laing* factors); *Shklyarevsky v. Ice Field Off. Dir.*, 2026 WL 1801029, at *2

ORDER - 5

Specifically, whether Petitioner has shown that she will suffer irreparable harm in the absence of waiver.

The Court concludes that Petitioner has met her burden of demonstrating irreparable injury under *Laing*.  Petitioner has been detained since March 18, 2026.  Dkt. # 1 at 4; *see also* Dkt. # 7 at 2.  And the pending appeals in her cases, filed in May and June respectively, will likely not be resolved for many more months.[4]  Courts in this district have repeatedly found that requiring individuals like Petitioner to wait for BIA review while in custody will "inflict the kind of harm that the bond hearing was designed to prevent—that is, prolonged detention without meaningful process"—and that such harm satisfies "irreparable injury" under *Laing*.  *Garcia Miranda v. Hernandez*, 2026 WL 1328227, at *3 (W.D. Wash. May 13, 2026).[5]  And contrary to Respondents' argument, *see* Dkt. # 7 at 6, Petitioner has supplemented her claim of irreparable harm from agency delays with evidence of individualized harm to her mental and physical wellbeing as a result of her ongoing detention.  *See* Dkt. # 2 at 3–4.  And while Petitioner's claimed harms are likely shared by other detainees at the NWIPC, that does negate her showing that she will suffer irreparable, individualized injuries if her detention continues.

The Court thus concludes that this case warrants waiver of the prudential exhaustion requirement, and so it proceeds to the merits of Petitioner's due process argument.

---

(W.D. Wash. June 23, 2026) (assuming without deciding that the *Puga* factors require exhaustion and proceeding directly to the *Laing* factors).

[4] *See, e.g.*, *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. 2025), *aff'd sub nom. Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026) (noting that ("[i]n 2024, [Executive Office of Immigration Review] data showed an average processing time of 204 days for bond appeals."); *Nguyen v. Scott*, 2026 WL 194232, at *4 (W.D. Wash. Jan. 26, 2026) (acknowledging that BIA appeals can pend for over six months).

[5] *See, e.g.*, *Garcia Miranda*, 2026 WL 1328227, at *3 (finding irreparable injury under *Laing* and waiving prudential exhaustion based on potential for prolonged detention); *W.T.M.*, 2026 WL 262583, at *3 (same); *Soriano v. Hernandez*, 830 F. Supp. 3d 1071, 1079 (W.D. Wash. 2026) (same); *Scott*, 2025 WL 3514304, at *4 (same).

ORDER - 6

B.      Abuse of Discretion

A habeas court has jurisdiction to review an IJ's bond determination for abuse of discretion. *See Martinez v. Clark*, 124 F.4th 775, 784–85 (9th Cir. 2024). "Under an abuse of discretion standard, [a federal court] cannot reweigh evidence . . . but can only determine whether the BIA applied the correct legal standard." *Id.* (cleaned up and citation omitted). And while the administrative scheme clearly "contemplates discretionary bond determinations by IJs—not federal district courts"—it is also true that "[b]ond determinations must bear a rational relationship between the governing legal standards and the facts and evidence in a given case." *Calderon*, 2026 WL 1487774, at *2; *Soto Gimenez v. Hernandez*, 2026 WL 1156075, at *8 (W.D. Wash. Apr. 29, 2026).

An IJ's flight risk determination is also reviewed under an abuse of discretion standard. *See Soriano*, 830 F. Supp. 3d at 1080. In determining whether a petitioner presents a flight risk, IJs may consider the following factors:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* at 1079–80 (quoting *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). And while an IJ may discuss other factors, a citation to other factors, absent any discussion of how they support a flight risk determination or why they outweigh the petitioner's evidence, is typically insufficient to sustain a flight risk finding. *See id.* at 1081; *see also Garcia Miranda*, 2026 WL 1328227, at *4 (collecting cases).

ORDER - 7

Here, the Court concludes that IJ Odell abused his discretion by failing to apply the correct legal standard in making his flight risk determination. As noted by Petitioner, the IJ's written memorandum does not mention the *Guerra* factors, let alone apply them to the facts of her case. *See generally* Dkt. # 3 at 17–20. It also does not meaningfully engage with Petitioner's evidence, including her evidence on the *Guerra* factors. *Id*. And it does not explain why, especially in light of Petitioner's evidence, "no amount of bail or condition of parole would be sufficient to mitigate the risk of flight in this case." *Id*.

Tellingly, Respondents' Return also does not mention Petitioner's evidence or make any argument in favor of IJ Odell's flight risk finding. *See generally* Dkt. # 7. In fact, the Return does not even address Petitioner's abuse of discretion arguments. *See id*. The Court thus concludes that IJ Odell abused his discretion in denying bond, thereby violating Petitioner's due process rights under the Fifth Amendment and entitling her to habeas relief.[6]

C.     Relief

Petitioner requests habeas relief in the form of immediate release. Dkt. # 1 at 18. Courts in this district have granted such relief in similar circumstances, concluding that petitioners are entitled to immediate release when their due process rights have been violated due to an IJ

---

[6] *See, e.g.*, *Soriano*, 830 F. Supp. 3d at 1079–81 (finding abuse of discretion and due process violation because "[t]he IJ provided no rationale why it should be concluded that under [the] circumstances Petitioner would try to flee rather than appear in immigration court to pursue claims for relief from removal proceedings, even if such claims were considered weak"); *De La Torre Ferretiz*, 2026 WL 2123037, at *5 (finding abuse of discretion and due process violation because "a petitioner's supposedly weak claims for relief from removal cannot by itself justify a finding of flight risk without explaining how this conclusion outweighs the other circumstances of their case"); *Soto Gimenez*, 2026 WL 1156075, at *7–8 (finding abuse of discretion and due process violation due to "[t]he IJ's failure to acknowledge or engage with evidence of [a change in circumstances], coupled with the absence of any articulated reasoning"); *Perez Velasquez v. Bondi*, 2026 WL 1042479, at *6–7 (S.D. Cal. Apr. 16, 2026) (finding abuse of discretion and due process violation because "[t]he IJ's failure to consider or apply any of the *Guerra* factors and decision to instead rely on three pieces of evidence that bear little if any relevance to Petitioner's risk of flight . . . while seemingly ignoring all evidence in Petitioner's favor constitutes a misapplication of the legal standard to the facts") (cleaned up and citation omitted).

ORDER - 8

abusing its discretion in denying bond.[7]  The Court thus finds immediate release on reasonable conditions of supervision to be the appropriate remedy.

The Court also notes that Respondents' argument—that permanent injunctive relief is not warranted because Petitioner does not expressly request such relief or make a showing under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006), *see* Dkt. # 7 at 9—is extraneous. Petitioner has not requested such relief.  *See generally* Dkt. # 1.  Nor is the Court's ability to award habeas relief limited by a petitioner's express requests.  *See, e.g.*, *Burnett v. Lampert*, 432 F.3d 996, 999 (9th Cir. 2005) ("Federal courts have a fair amount of flexibility in fashioning specific habeas relief.").  Respondents' concern regarding permanent injunctive relief thus has no bearing on the resolution of this petition.

**IV**
**CONCLUSION**

For these reasons, the Court GRANTS the petition (Dkt. # 1) and ORDERS as follows:

(1) Respondents shall release Petitioner from detention within 24 hours of this order.  Upon release, Petitioner shall be subject to reasonable conditions of supervision.

(2) Respondents and their respective officers, agents, employees, attorneys, and other persons acting on their behalf are prohibited from re-detaining Petitioner unless and until she is provided with adequate notice and a hearing before an immigration court to determine whether re-detention is appropriate.

(3) Petitioner may move for attorney fees and costs under the EAJA.  Although a petitioner must typically file such a motion within 30 days of final judgment, *see* 28 U.S.C. § 2412(d)(l)(B), the Court extends Petitioner's deadline until 30 days after the Supreme

---

[7] *See, e.g.*, *De La Torre Ferretiz*, 2026 WL 2123037, at *5 (ordering immediate release on reasonable conditions of supervision); *W.T.M.*, 2026 WL 262583, at *5 (same); *Soriano*, 830 F. Supp. 3d at 1082 (same).

Court issues its decision in *Montoya Palacios v. Liggins*, No. 25-1223. If Petitioner wishes to file a motion for fees before that date, the motion will be accepted but may be stayed by the Court pending resolution of the EAJA fee issue in *Montoya Palacios*.

(4) The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing pro se at said party's last known address.

Dated this 10th day of August, 2026.

John H. Chun
United States District Judge

ORDER - 10